## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number:  **16-06561-jw**
Adversary Proceeding Number:  **17-80038-jw**

**SUPPLEMENTAL ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**

The relief set forth on the following pages, for a total of 17 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**01/10/2018**



US Bankruptcy Judge
District of South Carolina

Entered: 01/10/2018

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re, | C/A No. 16-06561-JW |
| Billy Eugene Barnhardt, Jr. and Mary Elaine Barnhardt, | Adv. Pro. No. 17-80038-JW |
| Debtors. | |
| | Chapter 13 |
| Noelle Amy Beckham, | |
| Plaintiff, | |
| v. | |
| Mary Elaine Barnhardt, | |
| Defendant. | |

## SUPPLEMENTAL ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

THIS MATTER comes before the Court on the emergency motion of plaintiff Noelle Amy Beckham ("Plaintiff"), made pursuant to Federal Rules of Civil Procedure 52(b) and 59(e),[1] and applicable in this adversary proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9023,[2] ("Motion to Alter").[3]  Defendant Mary Elaine Barnhardt ("Defendant") filed a timely objection to the Motion to Alter.  At Plaintiff's request, the Court conducted an emergency telephonic hearing on the Motion on November 30, 2017, and thereafter took the matter under advisement.

In the Motion to Alter, Plaintiff asks the Court to alter or amend its Order denying

---

[1] Hereinafter "Rule."

[2] Hereinafter "Bankruptcy Rule."

[3] In addition to asking the Court to alter or amend its judgment, Plaintiff also asked the Court to stay enforcement of its Order on Cross-Motions for Partial Summary Judgment, and for expedited consideration of Plaintiff's request for a stay.

1

Plaintiff's Motion for Partial Summary Judgment, and granting Defendant's Motion for Partial Summary Judgment ("Summary Judgment Order").[4]  Having heard the arguments of counsel for the parties, and after considering the matters properly before the Court and the applicable legal authorities, the Court rules as follows:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**[5]

## I.    Relevant Procedural Background

This action was commenced on April 4, 2017, when Plaintiff filed an original and amended Complaint (collectively the "Complaint") seeking a declaration from this Court that, "[u]nder South Carolina law, by virtue of the [Approved Agreement, Plaintiff] has a vested right to [the Insurance Proceeds] . . . which right takes priority over the rights of any beneficiary designated in violation of [P]laintiff's rights," and requesting entry of "a judgment . . . declaring that she is the rightful owner of [the Insurance Proceeds] and that [the Insurance Proceeds are] not property of the chapter 13 estate."  Amended Complaint dated April 4, 2017 at 4, ¶ 23.[6]  In her prayer for relief, Plaintiff prayed "for an order declaring that she is the rightful owner of $175,000.00 of the proceeds of the group life insurance coverage for Debtor Billy Eugene Barnhardt, Jr., and that such portion of the proceeds is not property of the chapter 13 estate . . . ."  *Id.* at 4-5.

On September 25, 2017, Plaintiff filed a Motion for Partial Summary Judgment, a Memorandum of Law in Support, and Affidavit in Support (collectively, "Summary Judgment

---

[4] Terms capitalized herein shall have the same meanings ascribed in the Summary Judgment Order.

[5] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

[6] The Summary Judgment Order defined the "Approved Agreement" as the agreement entered into as of June 30, 2004, by and between Plaintiff and Billy Eugene Barnhardt, Jr. ("Husband") entitled "Complete Custody, Support, and Settlement Agreement," the terms of which were approved by and merged into the Order of the Family Court entered July 13, 2004.  The Summary Judgment Order defined "Insurance Proceeds" as the Gross Insurance Proceeds paid under the Guardian Policy ($225,000 plus accrued interest), less proceeds of approximately $50,000 that Guardian Insurance Company ("Guardian") paid to Defendant upon agreement of Plaintiff.

2

Motion"). Therein, Plaintiff asked the Court to declare that she was the rightful owner of the Insurance Proceeds under South Carolina law by virtue of the Approved Agreement. In addition, Plaintiff argued that Guardian's deposit of the Insurance Proceeds into the Court was effectively a distribution under the Guardian plan documents, which rendered the beneficiary designation issue moot.[7]

On September 27, 2017, Defendant filed her memorandum of law in support motion for summary judgment.[8] Defendant moved for summary judgment in her favor, arguing that as the named beneficiary in the Guardian plan documents, she was entitled to the Gross Insurance Proceeds as a matter of law by virtue of the plan documents rule and the preemption provisions of ERISA.[9]

On October 4, 2017, Plaintiff filed a memorandum in response to Defendant's motion for summary judgment ("Rebuttal Memorandum"). Therein, Plaintiff stated her incorrect belief that Defendant agreed that Plaintiff was "the rightful beneficiary [as a matter of state law] unless

---

[7] The third issue identified in Plaintiff's Summary Judgment Motion was whether Defendant's "alleged need for the Insurance Proceeds" gave her any property rights in the proceeds. The Court deemed this issue moot as a result of the findings contained in the Summary Judgment Order, but herein restores it as an active issue as a result of this Order. The Court finds that there are questions of material fact that preclude summary judgment on this issue.

[8] On September 28, 2017, Defendant filed an amended motion for summary judgment to add to her original memorandum of law a formal motion for summary judgment, which appears to have been inadvertently omitted from the original filing.

[9] The Court notes that both parties incorporated into their summary judgment pleadings arguments about whether this was a "pre" or "post" distribution action. In cases involving a contest between the named beneficiary of an ERISA qualified plan, and a third party not in possession of a qualified domestic relations order, the courts have adhered to the plan documents rule and required that the disputed insurance proceeds (whether the funds remain in the possession of the plan administrator or are deposited with the court) be distributed in the first instance to the named beneficiary, as this Court is doing. Thereafter, to the extent that the third party has stated a valid claim against the named beneficiary, the courts then address the validity of the third party's claim and determine, as between the third party and the named beneficiary in possession of the proceeds, who has rights therein. *See, e.g., Andochick v. Byrd,* 709 F.3d 296 (4th Cir.), *cert. denied,* —— U.S. ——, 134 S. Ct. 235 (2013); *see also Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131 (3d Cir. 2012), and cases cited therein (creditors and other claimants can only pursue claims against proceeds of ERISA qualified plan after the plan proceeds are placed in the beneficiary's hands); *Kickham Hanley P.C. v. Kodak Ret. Income Plan,* 558 F.3d 204 (2nd Cir. 2009) (same); *Savani v. URS Prof'l Sol., LLC,* 121 F. Supp. 3d 564, 569 (D.S.C. 2015) (ERISA's preclusion against attachment of benefits only applies while benefits are in the control of the plan administrator).

federal law requires a different result."[10]  In addition, Plaintiff expanded upon her argument that Guardian's deposit of the Insurance Proceeds with the Clerk was a distribution under the plan documents that mooted the application of ERISA.  Plaintiff further argued that when she consented to Guardian's deposit of the Insurance Proceeds with the Clerk, Defendant waived certain rights in the Insurance Proceeds.

On November 21, 2017, the Court entered the Summary Judgment Order.  Therein, the Court found that because the Guardian Policy arose out of a federally established ERISA qualified plan, federal law preempted state law claims that sought to alter an ERISA beneficiary designation. The Court found that the Guardian plan documents controlled, and that Defendant was the proper beneficiary of all of the proceeds of the Guardian Policy, including the Insurance Proceeds deposited with the Clerk.  The Court also found that the Insurance Proceeds were property of Defendant's bankruptcy estate.  The Summary Judgment Order rejected Plaintiff's argument that Guardian's delivery of the Insurance Proceeds to the Clerk should be treated as a *de facto* distribution under the Guardian plan documents, as well as her argument that Defendant's consent to the deposit was a waiver by Defendant of her claims to the Insurance Proceeds.  Finally, the Court found that the Complaint did not sufficiently state a claim for relief against Defendant individually, nor did it contain grounds or sufficient facts to enable the Court to consider alternate relief for Plaintiff against the Defendant.  However, the Court advised Plaintiff that she could attempt, in a subsequent proceeding, to pursue a direct claim against Defendant if she wished.[11]

---

[10] While Defendant does not dispute that Husband permitted the Term Policy to lapse, at no point has Defendant expressed agreement with Plaintiff's contention that the Approved Agreement gave her rights either in the Guardian Policy, or in any portion of the Gross Insurance Proceeds.

[11]  The Summary Judgment Order did not fully dispose of the adversary proceeding, but held the matter open for an adjudication on the merits of Defendant's counterclaims.  It also informed Defendant of the steps she needed to take to obtain delivery of the Insurance Proceeds from the Clerk.

4

On November 22, 2017, Plaintiff filed the Motion to Alter.  That same day, Defendant filed an objection to the motion.

On November 28, 2017, the Court notified the parties that it had scheduled an emergency hearing at Plaintiff's request on the Motion to Alter for November 30, 2017.  The Court further advised counsel that the deadline for any party to submit further arguments or briefs in support of or opposition to the Motion to Alter was November 29, 2017 at 12:00 p.m.

On November 29, 2017, Plaintiff filed an Amended Motion and Supporting Memorandum, and a Supplement to the Motion to Alter or Amend and Supporting Memorandum (collectively, together with the Motion to Alter, the "Motion to Alter").  The Court conducted a telephonic hearing on November 30, 2017, at which time the Court considered the arguments of the parties. At the conclusion of the hearing, the Court took the matter under advisement.

On December 1, 2017, the Court entered an Order on Plaintiff's Expedited Motion to Stay of Enforcement of the Judgment.  Therein, the Court gave Defendant the option of leaving the Insurance Proceeds in the Clerk's possession, or having the Insurance Proceeds distributed to Defendant's counsel, under certain specified conditions, until further Order of this Court.[12]

On December 5, 2017, without leave of the Court, Plaintiff submitted a second "Supplemental Memorandum in Support of Motion to Alter or Amend Judgment," wherein Plaintiff purported to further supplement her previous filings made on November 22, 28, and 29, 2017, and her arguments made at the November 30, 2017 hearing ("December 5 Submission"). Defendant, through an email sent by counsel to Chambers, objected to Plaintiff's December 5 Submission.

---

[12] It appears that Defendant elected to leave the Insurance Proceeds in the Clerk's possession.

## II.      Plaintiff's Attempt to Supplement the Record

By written correspondence with counsel for the parties, the Court established November 29, 2017 at noon as the deadline for parties to submit any additional arguments or briefs in advance of the November 30, 2017 hearing.  Before concluding the November 30, 2017 hearing, the Court asked counsel whether they had any further arguments to present.  Hearing none, the Court advised counsel that it was taking the matter under advisement based upon the arguments made at the hearing.  No party sought leave prior to the close of the record on November 30, 2017 for permission to submit further arguments or evidence, nor did the Court provide either party with the option or opportunity to do so.  This fact notwithstanding, Plaintiff's counsel filed the December 5 Submission.

Even absent Defendant's objection, it is not the Court's practice to consider an uninvited submission made by a party after the record is closed, particularly without a properly filed motion to reopen the record.  The Court finds that the December 5 Submission was untimely and improper.[13]

## III.      Plaintiff's Motion to Alter

### A.  Legal Standard

A motion to alter or amend a judgment pursuant to Rule 59(e) is only appropriate to accommodate an intervening change in controlling law, to account for new evidence not available at trial, or to correct a clear error of law or prevent manifest injustice.  *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *King's Grant Golf Acquisition, LLC v. Abercrombie* (*In re T2 Green*), 364 B.R. 592, 606 (Bankr. D.S.C. 2007).  Whether to grant a Rule

---

[13] Upon an examination of the December 5 Submission, it appears that nothing contained therein would alter the findings contained in the Summary Judgment Order or the Court's findings herein.

59(e) motion is within the Court's discretion, and "[r]econsideration of judgment after its entry is an extraordinary remedy which should be used sparingly." *In re T2 Green*, 364 B.R. at 605; *accord Pac. Ins. Co.,* 148 F.3d at 403; *see Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 407-08 (4th Cir. 2010) (whether or not to grant relief under Rule 59(e) is within the Court's discretion). While Rule 59(e) enables the court to correct its own errors or to reevaluate the basis for its decision, a Rule 59(e) motion cannot be used by the movant to relitigate issues, to "raise arguments or present evidence that could have been raised prior to the entry of judgment," or "to complete presenting his case after the Court has ruled against him." *Pac. Ins. Co.*, 148 F.3d at 403 (internal citations omitted). Furthermore, counsel's disagreement with the Court's ruling will not support relief under Rule 59(e). *Hutchinson v. Staton,* 994 F.2d 1076, 1081-82 (4th Cir. 1993); *McCall v. Williams*, 59 F. Supp. 2d 556, 558 (D.S.C. 1999) ("Mere disagreement with how the law is applied does not support a Rule 59(e) motion.").

In a similar vein, the purpose of a Rule 52(b) motion is to clarify essential findings of fact or legal conclusions, or to correct "manifest errors of law or fact." *Cent. Fid. Bank v. Cooper* (*In re Cooper*)*,* 116 B.R. 469, 471 (Bankr. E.D. Va. 1990) (internal citations and quotation marks omitted); *Patriot Homes, Inc. v. Ogle* (*In re Ogle*), C/A No. 02-00901-W, Adv. Pro. No. 02-80154-W, slip op. at 3 (Bankr. D.S.C. Mar. 3, 2003). Thus, on a timely motion made pursuant to Rule 52, a court may amend or clarify its earlier ruling, and may also make additional findings.

### B.   Plaintiff's Arguments

Plaintiff's Complaint asked the Court to declare that, as a matter of state law, the Approved Agreement controlled the distribution of the Insurance Proceeds and trumped Husband's designation of Defendant as the sole beneficiary of the Gross Insurance Proceeds paid under the Guardian Policy. Plaintiff argued that the Approved Agreement gave Plaintiff a "vested interest"

7

in the Guardian Policy,[14] and that the Guardian Policy was not property of Defendant's estate.

Plaintiff also claimed that pursuant to the Approved Agreement, Husband "contract[ed] away" the

ability to designate a beneficiary for the Guardian Policy other than Plaintiff.  Plaintiff argued that

for these reasons, the Court "must disregard beneficiary designations to the extent they conflict

with legal obligations imposed on the insured [in the Approved Agreement]."

### 1. Plaintiff's Declaratory Judgment Claim

Because this proceeding involves a federally established ERISA qualified plan, and federal

law preempts state law claims, Plaintiff's claims stand or fall by the terms of the Guardian plan

documents.  *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009).  The plan

documents rule requires ERISA plan administrators to distribute benefits in conformity with "the

directives of the plan documents."  *Id.* at 300; *Boyd v. Met. Life Ins. Co.*, 636 F.3d 138, 140 (4th

Cir. 2011) (plan documents control the distribution of plan benefits regardless of the provisions of

a divorce decree wherein named beneficiary waived his right to receive any proceeds from

deceased's insurance policies); *Metropolitan Life Ins. Co. v. Leich-Brannan*, 812 F. Supp. 2d 729,

735 (E.D. Va. 2011) (same); *see also* 29 U.S.C. § 1104(a)(1)(D) (employers are to distribute

benefits "in accordance with the documents and instruments governing the plan").  As discussed

in the Summary Judgment Order, and as held by the Supreme Court in *Kennedy*, ERISA preempts

state laws that attempt to "blur the bright-line requirement to follow plan documents in distributing

benefits."  *Kennedy*, 555 U.S. at 302; *see Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73,

83 (1995) (To ensure the ease of distribution of plan benefits, ERISA contains "an elaborate

scheme in place for enabling beneficiaries to learn their rights and obligations at any time, a

scheme that is built around reliance on the face of written plan documents."); *Metropolitan Life*

---

[14] Plaintiff did not assert until the November 30 hearing that the nature of her claimed vested interest was equitable.

*Ins. Co. v. Pettit*, 164 F.3d 857, 862 & 865 (4th Cir. 1998) (Congress intended ERISA to be the "exclusive federal regulation over employee benefit plans," and for the plans to be "subject . . . to only one body of national, uniform law," and "unless a domestic relations settlement complies with the QDRO requirements, ERISA preempts its enforcement through a state law mechanism.").

Defendant is the named beneficiary under the Guardian plan documents.[15]  As a matter of law, Defendant was entitled to a distribution of the Gross Insurance Proceeds from Guardian upon Husband's death.  To permit Plaintiff to circumvent the Guardian beneficiary designation through her state law claims associated with the Approved Agreement would directly contravene the plan documents rule, ERISA, and the holding in *Kennedy*.  Defendant is entitled to the Gross Insurance Proceeds, including an immediate distribution of the Insurance Proceeds deposited with the Clerk.

In an attempt to circumvent *Kennedy* and the plan documents rule, and relying on dicta in *McCarthy v. Estate of McCarthy,* 145 F. Supp. 3d 278 (S.D.N.Y. 2015), Plaintiff argued for the first time in her Summary Judgment Motion that Guardian's deposit of the Insurance Proceeds with the Clerk was a *de facto* distribution under the Guardian plan documents, the legal consequence of which was to satisfy the application of the plan documents rule, leaving "state law free to operate" for Plaintiff's benefit.  The Court disagrees.

The facts and circumstances in *McCarthy* are significantly different than those in this proceeding.  In *McCarthy*, after considering all the evidence presented at trial, the court concluded that there were significant ($360,000) constructively fraudulent transfers to the decedent's paramour, who was also being challenged as the beneficiary under the ERISA plan.  *McCarthy*

---

[15] It is uncontested that Husband's beneficiary designation qualifies as a plan document under ERISA.  *See also Boyd v. Met Life Ins. Co.*, 636 F.3d 138, 142 (4th Cir. 2011) (The plan documents rule applies with equal force to both employee pension benefit plans, and employee welfare benefit plans).

also included issues related to an insolvent probate estate, conflicting beneficiary designations,[16] and claims made under New York law.  Under the facts and law presented in *McCarthy,* the court found that the ex-wife was entitled to a constructive trust on the insurance proceeds, and ordered a direct distribution to her.

In contrast, the record before the Court at this stage of this proceeding is not sufficient to conclude a constructive trust is warranted.  There do not appear to be any allegations of "fraud, bad faith, abuse of confidence, or violation of a fiduciary duty," raised against Defendant.  *See In re Thames*, 21 B.R. 704, 707 (Bankr. D.S.C. 1981) (*citing Dominick v. Rhodes*, 24 S.E.2d 168, 172–73 (S.C. 1943)).  The burden of proof necessary to establish a constructive trust is high, and requires the submission of evidence that is "clear, definite, and unequivocal."  *See Carolina Park Assocs., LLC v. Marino*, 732 S.E.2d 876, 879 (S.C. 2012) (discussing the high burden of proof required to prove entitlement to a constructive trust).  To address the request for a constructive trust in this proceeding, the Court must consider outstanding issues of fact and the equities of the case.  Therefore, at this summary judgment stage, based upon the parties' cross-motions and the record before it, the Court cannot yet determine if Plaintiff can demonstrate an entitlement to the imposition of a constructive trust.  However, the Court can, and in fact must, conclude the right of Defendant to an immediate distribution under the subject ERISA plan documents.

In addition, in the present proceeding, the Insurance Proceeds were deposited with the Clerk pursuant to 28 U.S.C. § 2041,[17] and the provisions of a consent order executed by Plaintiff,

---

[16] In this proceeding, there are no conflicting beneficiary designations, and the Court can clearly hold, as it has, that Defendant is entitled to a distribution of the Insurance Proceeds based upon the record before it.

[17] Section 2041 of Title 28, "Deposit of moneys in pending or adjudicated cases," provides:

> All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court.
>
> This section shall not prevent the delivery of any such money to the rightful owners upon security,

Defendant, and Guardian.  *See* Stipulated Consent Order dated May 26, 2017.  There is nothing in

the Stipulated Consent Order to suggest that either Plaintiff or Defendant intended the order to

have any legal consequences between Plaintiff and Defendant, including a waiver of rights, other

than those expressly contained therein.  The Court also notes that it was not this Court's intention

that the Stipulated Consent Order would alter the parties' substantive rights in the Insurance

Proceeds in advance of the Court considering the issues presented on the merits.

Of equal significance is the fact that it appears no court in South Carolina shares Plaintiff's

view that a fiduciary's deposit of disputed funds into the court, such as in an interpleader action,[18]

is a *de facto* distribution under an ERISA plan.  These courts appear to view the deposit of funds

with a court as nothing more than a procedural event that replaces the original stakeholder with

the clerk as custodian for the funds.  *See, e.g., Unum Life Ins. Co. of Am. v. Brookshire*, Case No.

4:15-cv-01226-RBH-KDW, 2016 U.S. Dist. LEXIS 66607, *11 (D.S.C. April 27, 2016),

recommendation and report adopted as modified in 2016 WL 2935892 (D.S.C. May 20, 2016)

(interpleader action commenced by ERISA plan administrator; magistrate found in favor of named

beneficiaries and ordered funds distributed to them); *Bostic v. Bostic,* Civil Action No. 6:14–2130–

BHH, 2015 WL 5178163 (D.S.C. September 3, 2015) (ERISA plan administrator named as a

defendant deposited disputed insurance proceeds with the court; magistrate found that the plan

---

according to agreement of parties, under the direction of the court.

28 U.S.C. § 2041; *see also In re Casco Chem. Co.,* 335 F.2d 645, 649 (5th Cir. 1964) ("[M]oney in the registry of the federal court is neither in the hand of the clerk nor the judge," but is held "only for the persons judicially found by the court to be entitled thereto.") (internal citations and quotation marks omitted).

[18] Interpleader is a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund.  *See Chase Manhattan Bank v. Mandalay Shores Coop. Hous. Ass'n (In re Mandalay Shores Coop. Housing Ass'n)*, 21 F.3d 380, 383 (11th Cir. 1994) (general discussion of interpleader); *White v. FDIC*, 19 F.3d 249, 251 (5th Cir. 1994) (same).  Interpleader does not convey substantive rights on the adverse claimants; it is merely equitable remedy designed to protect the stakeholder from multiple, inconsistent judgments and to relieve the stakeholder of the obligation of determining which claimant is entitled to the fund.  *See* 4 James Wm. Moore *et al.*, *Moore's Federal Practice* § 22.02[1], at 22–8 to 22–9 (3d ed. 2001).

11

documents rule applied, and recommended that deposited benefits be paid to beneficiaries named in the plan documents); *Companion Life Ins. Co v. Hopson,* Civil Action No. 3:10–63–JFA–JRM, 2012 WL 527581 (D.S.C. Jan. 23, 2012), adopting report and recommendation at 2012 WL 527579 (D.S.C. February 16, 2012) (ERISA plan administrator named as a defendant deposited disputed insurance proceeds with the court; magistrate recommended that proceeds of policy be distributed beneficiary named in plan documents; district court approved and adopted the magistrate's report and directed the clerk to disburse all funds deposited in the court's registry to the named beneficiary).[19]

For all of these reasons, the Court confirms its earlier finding in the Summary Judgment Order that Guardian's deposit of the Insurance Proceeds with the Court had no legal impact on the rights of Plaintiff or Defendant in the Insurance Proceeds.

### 2.  Plaintiff's Other Claims

Citing to *Andochick v. Byrd*, 709 F.3d 296, 301 (4th Cir.), *cert. denied,* ⸺ U.S. ⸺, 134 S. Ct. 235 (2013),[20] this Court fully recognized in the Summary Judgment Order that "ERISA does not preempt post-distribution suits against ERISA beneficiaries." However, Plaintiff's only remaining allegations did not appear to state a direct claim against Defendant individually, other

---

[19] Plaintiff also argued that *Andochick* supported her argument regarding the effect of a deposit of funds into the Court's registry. However, in *Andochick*, the disputed proceeds remained at all times in the hands of the plan administrator, who was directed by the District Court "to pay the ERISA funds to Andochick.'" The District Court then held that once he was in possession of the funds, and "[i]n accordance with the [state court's] order, Andochick must then waive his right to these funds, distributing them instead to Erika's estate." *Andochick v. Byrd,* Civil Action No. 1:11–cv–739, 2012 WL 1656311, at *13 (E.D. Va. May 9, 2012), *affirmed* 709 F.3d 296 (4th Cir.), *cert. denied,* ⸺ U.S. ⸺, 134 S. Ct. 235 (2013).

[20] The *Andochick* Court addressed the issue of "whether ERISA prohibits a state court from ordering [ex-husband], who had previously waived his right to [ERISA] benefits, to relinquish them to the administrators of [deceased ex-wife's] estate." *Andochick*, 709 F.3d at 297. The Fourth Circuit Court of Appeals found that ex-husband was entitled, as the named beneficiary in the ERISA plan documents, to an initial distribution of the insurance proceeds, and that after his receipt of the proceeds, the administrators of deceased's estate could pursue the direct claims they held against ex-husband by virtue of the state court contempt order. *Id.* at 299-301.

than seeking declaratory relief and therefore, the Court concluded that Plaintiff needed to raise any direct claims against Defendant in a different proceeding. For the reasons set forth herein, the Court now amends its holding.

When asked during the November 30 hearing what claims she was asserting against Defendant, counsel for Plaintiff confirmed that the Complaint sought declaratory relief. Counsel also argued that implicit in the request for declaratory relief was Plaintiff's request that, in the event her legal arguments failed, Plaintiff wished the Court to impose a constructive trust on the Insurance Proceeds.[21] Plaintiff cited the case of *Taylor v. Taylor*, 353 S.E.2d 156 (S.C. Ct. App. 1987), as one that supported Plaintiff's request for alternate relief.[22]

Rule 8, made applicable in this adversary proceeding by Bankruptcy Procedure 7008, states that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8; Fed. R. Bankr. P. 7008. Although no special form of pleading is generally required,[23] "[e]ach allegation [in a pleading] must be simple, concise, and direct" and "be construed so as to do justice." Rule 8(d)(1) and (e). *See* Charles Alan Wright and Arthur R. Miller, *et al., 5 Federal Prac. & Proc. Civ.* § 1215 (3d ed) (Rule 8 "indicates that a basic objective of the rules is to avoid civil cases turning on

---

[21] Constructive trusts are equitable creatures that arise "entirely by operation of law without reference to any actual or supposed intentions of creating a trust." *Smith v. S.C. Ret. Sys.*, 520 S.E.2d 339, 352 (S.C. Ct. App. 1999) (quoting *McNair v. Rainsford*, 499 S.E.2d 488, 501 (S.C. Ct. App. 1998)). Constructive trusts are recognized when the "circumstances under which property was acquired make it inequitable that [the property] be retained by the one holding legal title." *Macaulay v. Wachovia Bank of S.C., N.A.*, 569 S.E.2d 371, 375 (S.C. Ct. App. 2002) (internal citation and quotation marks omitted). The burden of proof required to establish a constructive trust is high, and the evidence offered by the party seeking the imposition of the constructive trust must be "clear, definite, and unequivocal." *Carolina Park Assocs., LLC v. Marino*, 732 S.E.2d 876, 879 (S.C. 2012); *Whitmire v. Adams*, 257 S.E.2d 160, 163–65 (S.C. 1979); *Lollis v. Lollis*, 354 S.E.2d 559, 561 (S.C. 1987).

[22] *Taylor* involved a plaintiff's request for imposition of a constructive trust on insurance proceeds.

[23] *But see* Rule 9, Pleading Special Matters, which requires a party who alleges fraud or mistake to "state with particularly the circumstances surrounding the fraud or mistake."

13

technicalities and to require that the pleading discharge the function of giving the opposing party

fair notice of the nature and basis or grounds of the pleader's claim and a general indication of the

type of litigation that is involved. . . .").

In connection with the Motion, the Court has again reviewed the Complaint.  Although it

contains very limited factual allegations, and fails to identify any specific legal or equitable

theories of recovery, the Court concludes that the Complaint may be construed to also challenge

whether the Insurance Proceeds are property of Defendant's bankruptcy estate even after their

distribution to Defendant.[24]

In making this determination, the Court also considers that requiring Plaintiff to bring a

separate action would result in increased delay and cost, which would not be in the best interest of

either party.  Therefore, in the interest of judicial economy, and after distribution of the proceeds,

the Court will allow the parties' direct claims against the other, as contained in the existing

pleadings, to be tried on the merits.  Furthermore, because this Court has subject matter jurisdiction

and final authority over this issue, adjudication of each party's claims against the other will take

place in this Court.

In so holding, the Court alters so much of the Summary Judgment Order as finds that the

Complaint failed to state additional grounds or sufficient facts for alternative relief, and also alters

---

[24] Section 541 defines "property of the estate" as all legal and equitable interests of the debtor in property as of the commencement of the bankruptcy case, which interests are determined by applicable nonbankruptcy law.  11 U.S.C. § 541(a)(1); *Butner v. U.S.*, 440 U.S. 48 (1979).  Property of the estate also includes:

> Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date . . . as a beneficiary of a life insurance policy or of a death benefit plan.

11 U.S.C. § 541(a)(5)(C).  By virtue of Husband's death and her designation as the beneficiary of the Guardian Policy, Defendant acquired an interest the Gross Insurance Proceeds within 75 days of the petition date.  Therefore, subject to Plaintiff meeting her burden of demonstrating otherwise at the trial of this matter, it appears that the Gross Insurance Proceeds are property of Defendant's bankruptcy estate.

so much of the Summary Judgment Order as finds that the Summary Judgment Order renders moot

Defendant's equitable claims and defenses.

## CONCLUSION

For the reasons set forth in the Summary Judgment Order, as amended and supplemented

by the findings contained herein, it is:

ORDERED that Defendant is the beneficiary of the Gross Insurance Proceeds by virtue of

the plan documents rule, and is entitled to an immediate distribution of the Insurance Proceeds.

Having ruled upon the Motion to Alter, the stay entered by this Court on December 1, 2017

pursuant to Rule 62 is dissolved.[25]   The Insurance Proceeds, together with any accrued interest,

shall be disbursed to Defendant upon Defendant's submission to the Clerk of Court of a completed

AO Form 213.[26]  It is further,

ORDERED that pursuant to Rule 52(b), the Court alters so much of the Summary Judgment

Order that found that the Complaint failed to state an alternate claim for relief against Defendant,

and that found that Defendant's equitable defenses were moot.  The Court confirms that according

to the Summary Judgment Order, ERISA does not prohibit a third party's assertion of state law

claims against a named beneficiary after distribution of the ERISA plan proceeds.  It is further,

ORDERED that this proceeding appears ready for adjudication on the merits of Plaintiff's

remaining claims against Defendant, Defendant's defenses thereto, and Defendant's counterclaims

---

[25] Although the December 1, 2017 Order does not cite to a specific rule, the Motion to Amend requested a stay of enforcement of the Summary Judgment Order pursuant to Rule 62, which provides for a stay of the enforcement of a judgment pending the Court's disposition of a Rule 52(b) motion.  Fed. R. Civ. P. 62(b)(2); Fed. R. Bankr P. 7062.

[26] Defendant may obtain a copy of this form either by contacting the Clerk's office or downloading a .pdf fillable form from www.rid.uscourts.gov/menu/generalinformation/forms/vendor/ao_213.pdf.

against Plaintiff.  By separate order, the Court will require the parties to submit a Joint Pretrial

Order, and will set the date for the final pretrial conference, and thereafter a trial.

**AND IT IS SO ORDERED.**